IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NAVIGATORS INSURANCE COMPANY,

                                 Case No.:

             **Plaintiff,**

    **v.**

ASSOCIATION OF PHYSICIANS OF
PAKISTANI DESCENT OF NORTH
AMERICA, MANSOOR ALAM,
JAMIL AZAM FAROOQUI,
IQBAL ZAFAR HAMID, AKHTAR HAMIDI,
NADEEM KAZI, MUHAMMED SOHAIL
KHAN, and MOHAMMED NASAR QURESHI,

             **Defendants.**

## COMPLAINT FOR DECLARATORY RELIEF AND RESCISSION

1.    Plaintiff Navigators Insurance Company ("Navigators"), by and through its attorneys, Michael J. Duffy and Abigail E. Rocap of Wilson, Elser, Moskowitz, & Dicker LLP, for its complaint against Defendants Association of Physicians of Pakistani Descent of North America ("APPNA"), Mansoor Alam ("Alam"), Jamil Azam Farooqui ("Farooqui"), Iqbal Zafar Hamid ("Hamid"), Akhtar Hamidi ("Hamidi"); Nadeem Kazi ("Kazi"), Muhammed Sohail Khan ("Khan"), and Mohammed Nasar Qureshi ("Qureshi") (collectively "Defendants"), states as follows:

## INTRODUCTION

2.    This declaratory judgment action concerns an insurance coverage dispute arising under a liability policy issued by Navigators to APPNA (hereafter the "Policy"), which provided, subject to all of its terms, both Directors & Officers Liability coverage and Employment Practices Liability coverage. A true copy of the Policy, the terms of which are incorporated herein by reference, is attached as "**Exhibit A**."

8883118v.6

3.     In controversy is whether the Policy provides coverage for a civil action, captioned *Dr. Shahid Rashid v. Association of Physicians of Pakistani-Descent of North America, Iqbal Zafar Hamid, Mansoor Alam, Akhtar Hamidi, Jamil Azam Farooqui, Nadeem Kazi, Muhammed Sohail Khan, and Mohammed Nasar Qureshi*, Case No. 2017L000991, filed by Dr. Rashid in the Circuit Court of DuPage County, Illinois, on September 7, 2017 (the "Rashid Action").  A true and accurate copy of the complaint filed in the Rashid Action is attached hereto as "**Exhibit B**."

4.     Upon information and belief, although only APPNA and Drs. Qureshi and Farooqui have tendered the matter to Navigators for coverage, each of the Defendants in the Rashid Action claims to be an Insured under the Policy.  Accordingly, pursuant to 28 U.S.C. §2201, Navigators seeks a judgment that it has no duty under the terms of the Policy to defend or indemnify any of the Defendants for any Loss in connection with the Rashid Action for the following reasons:

a.     Because the Rashid Action arises out of facts and circumstances surrounding a prior Claim, which APPNA was required but failed to disclose to Navigators on its application for insurance (the "Application"), the Application contains material misrepresentations giving rise to a legal and equitable rights of rescission, as well as a cause of action for misrepresentation;

b.     Because the Rashid Action arises out of facts and circumstances surrounding a prior Claim, which should have been disclosed in APPNA's Application, coverage is specifically excluded under the terms of the Application, which is incorporated into and made a part of the Policy;

2

     c.     Because, upon information and belief, Defendants were aware of the facts and circumstances giving rise to a prior Claim, which should have been disclosed to Navigators in the Application, under the express terms of the Policy it is void as regards Defendants;

     d.     Because the Rashid Action arises out of facts and circumstances surrounding a prior Claim, which was known to APPNA at the time of the Application and prior to the Policy's issuance, coverage is precluded under the "fortuity" and/or "known loss" doctrine;

     e.     Because the Rashid Action arises out of facts and circumstances surrounding a prior Claim, under the terms of the Policy it is deemed a Claim first made prior to the inception of the Policy which does not trigger coverage;

     f.     Because the Rashid Action is a Claim brought by an Insured against other Insureds, coverage under the Policy's D&O Coverage is precluded by the "insured vs. insured" exclusion; and

     g.     Because the Rashid Action alleges conduct which falls within the purview of the exclusion in each of the D&O Coverage and EPL Coverage for unlawful advantage and criminal acts, and because illegal and intentional wrongdoing is generally uninsurable as a matter of public policy, coverage would be precluded for any Defendant who is determined by a final adjudication to have engaged in such conduct.

## JURISDICTION AND VENUE

5.     This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, for the

purpose of determining an actual controversy between the parties, as hereinafter more fully detailed below.

6.      This action is currently ripe for adjudication, as an actual controversy exists between the parties regarding coverage under the Policy for the Rashid Action.

7.      The jurisdiction of this Court is premised upon 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest.  Upon information and belief, the defense costs incurred by the Insureds in the Rashid Action already exceed this amount.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a), because APPNA maintains its principal place of business in this District and certain events or alleged omissions giving rise to this action occurred in this District, including the issuance of the subject Policy and the filing of the ongoing Rashid Action.

## PARTIES

9.      Plaintiff, Navigators Insurance Company ("Navigators") is a New York corporation with its principal place of business located in New York, New York.

10.     Defendant the Association for Physicians of Pakistani Descent of North America ("APPNA") is a not-for-profit corporation organized under the laws of Illinois with its principal place of business at 6414 South Cass Avenue, Westmont, Illinois 60559, and is also named as a defendant in the Rashid Action.

11.     Defendant Mansoor Alam ("Alam") is a resident of the State of Illinois, was a member of APPNA at all relevant times, and is named as a defendant in the Rashid Action.

12.    Defendant Jamil Azam Farooqui ("Farooqui") is a resident of the State of Kentucky, was a member of APPNA at all relevant times, and is named as a defendant in the Rashid Action.

13.    Defendant Iqbal Zafar Hamid ("Hamid") is a resident of the State of Florida, was a member of APPNA at all relevant times, and is named as a defendant in the Rashid Action.

14.    Defendant Akhtar Hamidi ("Hamidi") is a resident of the State of Arizona, was a member of APPNA at all relevant times, and is named as a defendant in the Rashid Action.

15.    Defendant Nadeem Kazi ("Kazi") is a resident of the State of Arizona, was a member of APPNA at all relevant times, and is named as a defendant in the Rashid Action.

16.    Defendant Muhammed Sohail Khan ("Khan") is a resident of the State of Illinois, was a member of APPNA at all relevant times, and is named as a defendant in the Rashid Action.

17.    Defendant Mohammed Nasar Qureshi ("Qureshi") is a resident of the State of New Jersey, was a member of APPNA at all relevant times, and is named as a defendant in the Rashid Action.

## FACTUAL BACKGROUND

18.    While this insurance coverage matter specifically concerns coverage under the Policy for the Rashid Action, it arises out of a controversy and Claim concerning the Executive Committee elections held by APPNA in September 2016, prior to the issuance of the Policy. That Claim was not disclosed in the Application submitted by APPNA to Navigators seeking insurance, upon which Navigators relied in issuing the Policy.

### I.    The Cease and Desist Letter

19.    Prior to the effective term of the Policy, a cease and desist letter dated September 20, 2016 was sent on behalf of Rashid, by counsel, to APPNA (the "Cease and Desist Letter").

5

The Cease and Desist Letter was addressed to Jennifer Wozniak Watson, APPNA's Director of Operations. A true and accurate copy of the Cease and Desist Letter is attached hereto as "**Exhibit C**."

20.     The Cease and Desist Letter alleges "defamatory statements" against Rashid in connection with APPNA's Executive Committee elections, including "statements of Dr. Jamil Farooqui ('Farooqi') and Dr. M. Nasar Qureshi ('Qureshi') in their representative capacities, in emails sent to all APPNA members on September 15, 2016 and September 16, 2016."

21.     Specifically, Rashid alleges that "APPNA, by Farooqui, Ali, and Qureshi, falsely infer that Dr. Rashid was involved in a scheme to defraud the election process. They disseminated confidential information by referencing that nefarious activity may have occurred from Dr. Rashid's well-known location."

22.     The Cease and Desist Letter "requests that APPNA immediately":

a.      "cease and desist from making, or allowing to be made in its name, any further defamatory allegations against Dr. Rashid"; and

b.      "issue a formal apology to Dr. Rashid and sending such apology via email or first class mail to all members of APPNA for inference of any wrongdoing on his part in the elections process."

23.     Although it had previously issued insurance policies to APPNA of a type similar to the at-issue Policy, no such policy issued by Navigators was in effect at the time of the Cease and Desist Letter.

## II.     The Policy Application

24.     On or about September 28, 2016, shortly after the Cease and Desist Letter was issued, a written application was submitted to Navigators by or on behalf of APPNA for the

6

purposes of obtaining insurance of the type offered by the Policy (the "Application"). A true copy of the Application and supporting documents, the terms of which are incorporated herein by reference, is attached hereto as "**Exhibit D**."

25.     The Application, titled "Application for Not-For-Profit Directors and Officers Liability Insurance, Employment Practices Liability Insurance and Fiduciary Liability Insurance," is dated September 28, 2016 and was executed on behalf of APPNA by Jennifer Wozniak Watson.

26.     Section 9 the Application, titled "Prior Loss History," includes several questions regarding prior and known claims or potential claims which are material to the risk to be insured.

27.     Section 9 the Application includes the following question at subsection c:

Does the Applicant or any person in his or her capacity as director, officer, trustee, or any person responsible for insurance, complaints or claim reporting, have knowledge of any act, error, omission, fact, incident, situation, unresolved dispute or other circumstance that is or could be the basis for a claim under the proposed insurance policy?

28.     Next to the foregoing question, the Application provides boxes for the applicant's answer marled "Yes" and "No." APPNA responded to the question by checking the box marked "No."

29.     Upon information and belief, APPNA and the other Defendants had received and were aware of the Cease and Desist Letter at the time of the Application and therefore had knowledge of it. Such knowledge included at least one director, officer, and/or trustee of APPNA, and/or a person responsible for insurance, complaints, or claim reporting at APPNA, including but not limited to Jennifer Wozniak Watson.

30.     At the time of the Application, the matters set forth in the Cease and Desist Letter constituted an act, error, omission, fact, incident, situation, unresolved dispute or other circumstance that is or could be the basis for a claim under the proposed insurance policy.

31.     As a result of the foregoing, APPNA's answer to the question at Section 9.c. of the Application was materially false.

32.     Immediately following Section 9 of the Application, the policy states, in relevant part and in capitalized letters and bold font:

> **IT IS UNDERSTOOD AND AGREED THAT ANY CLAIM ARISING OUT OF ANY SITUATION THAT IS OR SHOULD HAVE BEEN REPORTED IN a, b or c ABOVE IS EXCLUDED FROM THE PROPOSED INSURANCE.**

33.     In addition, at the top of the final page of the Application, which bears the signature of Jennifer Wozniak Watson, under the heading "DECLARATIONS AND SIGNATURE," the Application provides, in relevant part:

NOTICE TO **APPLICANT** – PLEASE READ CAREFULLY

FOR THE PURPOSE OF THIS APPLICATION THE UNDERSIGNED AUTHORIZED AGENT OF THE PERSON(S) AND ENTITY(IES) PROPOSED FOR THIS INSURANCE DECLARE THAT THE TO THE BEST OF HIS/HER KNOWLEDGE AND BELIEF AFTER FULL INVESTIGATION INQUIRY OF EVERY DIRECTOR, OFFICER, TRUSTEE OR ANY PERSON RESPONSIBLE FOR  INSURANCE, COMPLAINTS OR CLAIM REPORTING, THE STATEMENTS IN THIS APPLICATION, AND IN ANY ATTACHMENTS, ARE TRUE AND COMPLETE.  THE INSURER IS AUTHORIZED TO MAKE ANY INQUIRY IN CONNECTION WITH THIS APPLICATION.  ACCEPTING THIS APPLICATION DOES NOT BIND THE INSURER TO PROVIDE, OR THE **APPLICANT** TO PURCHASE, THE INSURANCE.

THE INFORMATION CONTAINED IN AND SUBMITTED WITH THIS APPLICATION IS ON FILE WITH THE INSURER AND ALONG WITH THE APPLICATION IS CONSIDERED PHYSICALLY ATTACHED TO THE POLICY AND WILL BECOME PART OF SUCH POLICY IF ISSUED.  THE INSURER WILL HAVE RELIED UPON THIS APPLICATION AND ATTACHMENTS IN ISSUING ANY POLICY.

IF THE INFORMATION IN THIS APPLICATION OR IN ANY ATTACHMENT MATERIALLY CHANGES BETWEEN THE DATE OF THIS APPLICATION AND THE POLICY EFFECTIVE DATE, THE **APPLICANT** WILL NOTIFY THE INSURER WHO MAY MODIFY OR WITHDRAW ANY QUOTATION OR AGREEMENT OT BIND INSURANCE.

8

34.     At no time after the submission of the Application and prior to the issuance of the Policy did APPNA advise there had been any changes in APPNA's submission to Navigators.

35.     Navigators, in fact, reviewed the Application and other submissions by or on behalf of APPNA, including APPNA's answer to the Question at Section 9.c., in analyzing the risk and determining whether to issue a policy of insurance and at what premium.

**III.    Issuance of the Policy**

36.     In reliance on the Application and other submissions by or on behalf of APPNA, Navigators issued InNAVation Policy No. NY16DOLV03191NV to APPNA, as the insured Company, for the effective period of October 7, 2016 to October 7, 2017 (the aforementioned "Policy"). The Declarations indicate that the insurance purchased includes coverage under the Policy's DIRECTORS AND OFFICERS LIABILITY Coverage Part (the "D&O Coverage") and EMPLOYMENT PRACTICES LIABILITY Coverage Part ("EPL Coverage").

37.     Pursuant to Item 4 of the Declarations, the Policy provides a $1,000,000 maximum aggregate limit of liability for all Loss, inclusive of Costs of Defense, including such Loss for any claims made under the D&O Coverage and EPL Coverage. The D&O Coverage is subject to a $10,000 retention for each Claim under Insuring Agreements B and C, and the EPL Coverage is subject to a $5,000 retention for each Claim.

38.     The Policy's General Terms and Conditions ("GT&C") state that Navigators' agreement to insure APPNA is made "in reliance upon all statements made and information furnished to [Navigators], including the statements made in the **Proposal Form** [.]" Identical language is repeated in the D&O Coverage and EPL Coverage.

39.     The Policy's GT&C define "Proposal Form" a:

1.      the application or proposal form attached to and forming part of this Policy, together with any materials submitted therewith; and

2.      any applications or proposal forms submitted in connection with any policy in an uninterrupted series of policies issued by the Insurer of which this Policy is a renewal or replacement, together with any materials submitted therewith;

all of which will be retained on file by the Insurer and will be deemed to be physically attached to and form part of this Policy.

40.      Section VIII.F. of the Policy's GT&C, as amended by Endorsement 1.VIII, provides:

It is agreed by the **Insureds** that the particulars and statements contained in the **Proposal Form** and any information provided therewith (which shall be on file with the Insurer and deemed attached hereto as if physically attached hereto) are the basis of this Policy and are to be considered as incorporated in and constituting a part of this Policy.  It is further agreed by the **Insureds** that the statements in the **Proposal Forms** or in any information provided therewith are their representations, that they are material and that this Policy is issued in reliance upon the truth of such representations; provided, in the event that the **Proposal Form** contains misrepresentations made with the actual intent to deceive, or contains misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by Underwriters under this Policy, this Policy shall be void and have no effect whatsoever.  Knowledge of any matter which may give rise to a claim or any misrepresentation made by an **Executive Officer** shall be imputed to the **Company**, but will not be imputed to any **Insured Person** who had no knowledge of the matter which may give rise to a claim or the misrepresentation.

41.      As set forth in the Declarations, the Policy was issued in the State of Illinois to APPNA at its Illinois address, through the Chicago, Illinois office of Kraft Lake Insurance Agency.  Accordingly, interpretation of the Policy's provisions is subject to Illinois law.

## IV.    The Discovery Action

42.      On December 1, 2016, a lawsuit captioned *Dr. Shahid Rashid v. Association of Physicians of Pakistani-Descent of North America*, Case No. 2016CH15631, was filed in the Circuit Court of Cook County, Illinois (the "Discovery Action").  A true and accurate copy of the complaint filed in the Discovery Action is attached hereto as "**Exhibit E**."

8883118v.6

43. The complaint filed in the Discovery Action alleged that Rashid ran for president of APPNA during the 2016 APPNA election, and that, throughout the election, "false information regarding alleged wrongful activity of Dr. Rashid has been issued by certain individuals believed to be members and directors of APPNA" which "caused the APPNA to stop the election."

44. Rashid further alleged that he "is the potential plaintiff in an action for defamation and business libel." Accordingly, by the Discovery Action, Rashid sought to obtain certain discovery for "all information relating to the identity of the person or persons who have defamed and spread business libel of Dr. Rashid."

45. The Discovery Complaint was not submitted to Navigators for coverage under the Policy. Upon information and belief, the Discovery Action was ultimately dismissed.

## V. The Injunction Action

46. On December 29, 2016, Rashid filed a second complaint, captioned *Dr. Shahid Rashid v. Association of Physicians of Pakistani-Descent of North America*, Case No. 2016CH16805, in the Circuit Court of Cook County, Illinois (the "Injunction Action"). A true and accurate copy of the Injunction Complaint is attached hereto as "**Exhibit F**."

47. The complaint filed in the Injunction Action alleged that the election for APPNA's 2017 Executive Committee, held between September 13, 2016 and September 15, 2016, was suspended on September 14, 2016 due to "unusual activity," and subsequently cancelled on September 15, 2016.

48. Rashid further alleged that, following the cancellation of the election, "individuals associated with APPNA then made slanderous comments about Dr. Rashid by wrongfully insinuating that he was involved in foul play that led to the cancellation of the initial election."

8883118v.6

49.     By the Injunction Action, Rashid sought: (a) a declaration that the APPNA did not properly conduct its election and that the election is therefore void; (b) an order enjoining the APPNA from announcing the winners of the election; and (c) an order directing a new election under supervision of the court.

50.     The Injunction Complaint was not submitted to Navigators for coverage under the Policy. Upon information and belief, the Injunction Action was ultimately dismissed.

## VI.     The Rashid Action

51.     On September 7, 2017, Rashid brought his third lawsuit against APPNA, the Rashid Action, this time filing it in the Circuit Court of DuPage County, Illinois and naming a number of current or former directors and/or officers of APPNA, the individual Defendants here. The Rashid Action alleges causes of action in three Counts, including: (1) defamation per se; (2) false light; and (3) conspiracy to defame Rashid.

52.     The complaint filed in the Rashid Action again alleges that, in September 2016, Rashid ran for the position of President-Elect of APPNA. Prior to running for president, Rashid had purportedly been "elected to the Executive Committee for the two year period preceding September 13, 2016," and "served as Treasurer in 2014, and as Secretary in 2015."

53.     As in the Injunction Action, Rashid claims that, after the APPNA election commenced on September 13, 2016, the defendants sent an email to the entire APPNA membership, stating that IP addresses located in South Texas were trying to interfere with the election by hacking into the server of the election company. The email allegedly requested that the perpetrator be banned from APPNA.

54.     Rashid, purportedly the only candidate in the election from South Texas, alleges that this was used to insinuate that he conducted a hack of the election, causing harm to his

reputation. Rashid further alleges that the defendants knew that no breach had occurred in the election process, and intentionally caused the cancellation of the election.

55. For each Count asserted in the Rashid Action, Rashid seeks judgment against each defendant "in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00) and … punitive damages in an amount of FIVE MILLION DOLLARS ($5,000,000.00), plus costs of this lawsuit."

**VII.     Navigators' Denial of Coverage**

56. On October 9, 2017, APPNA provided notice of the Rashid Action to Navigators, by and through its broker. A true and accurate copy of the broker's October 9, 2017 email, with attached letter from APPNA dated September 22, 2017, is attached hereto as "**Exhibit G**."

57. Navigators acknowledged receipt of APPNA's tender of the Rashid Action by letter dated October 10, 2017, and reserved all rights under the Policy. A true and accurate copy of the October 10, 2017 letter is attached hereto as "**Exhibit H**."

58. On or about October 19, 2017, defense counsel retained by APPNA provided Navigators with copies of the Discovery Complaint and Injunction Complaint. This was the first time that Navigators became aware of these related Claims. A true and accurate copy of defense counsel's October 19, 2017 email transmitting these documents is attached hereto as "**Exhibit I**."

59. The Cease and Desist Letter was also included in the materials provided by defense counsel on October 19, 2017, attached as an exhibit to the affidavit of Jennifer Wozniak-Watson in connection with a motion to dismiss the Discovery Complaint. This was also the first time Navigators became aware of this related Claim.

60. On November 15, 2017, Navigators issued a letter to APPNA denying coverage for the Rashid Action and continuing to reserve all rights. Navigators' letter notes, among other

things, that coverage is unavailable because the Cease and Desist Letter constituted a related Claim which pre-dated the inception of the Policy. A true and accurate copy of the November 15, 2017 letter is attached hereto as "**Exhibit J**."

61.     By letter dated November 27, 2017, defendant Farooqui submitted a copy of the Rashid Action and requested coverage from Navigators based on his position as Chair of the Nomination & Election Committee of APPNA. A true and accurate copy of the November 27, 2017 letter is attached hereto as "**Exhibit K**."

62.     By letter dated November 29, 2017, Navigators acknowledged receipt of Farooqui's tender and reserved all rights under the Policy. A true and accurate copy of the November 29, 2017 letter is attached hereto as "**Exhibit L**."

63.     On December 6, 2017, Navigators issued a letter to Farooqui denying coverage for the Rashid Action and continuing to reserve all rights. Consistent with its November 15, 2017 letter to APPNA, Navigators' letter notes, among other things, that coverage is unavailable because the Cease and Desist Letter constituted a Related Claim which pre-dated the inception of the Policy. A true and accurate copy of the December 6, 2017 letter is attached hereto as "**Exhibit M**."

64.     On December 7, 2017, counsel for Defendant Qureshi contacted Navigators inquiring about coverage for the Rashid Action. Based on that email, it appears that Navigators' November 15, 2017 letter to APPNA regarding coverage was not shared with all Defendants. Accordingly, on December 8, 2017, Navigators forwarded a copy of the November 15, 2017 letter to Qureshi's counsel, noting that coverage was denied for the Rashid Action because it relates to a prior Claim which pre-dated the inception of the Policy. A true and accurate copy of the December 7-8, 2017 email correspondence is attached hereto as "**Exhibit N**."

## VIII. The NJ Action

65.     To date, neither APPNA nor Farooqui have challenged Navigators assessment of coverage for the Rashid Action.  However, on December 21, 2017, defendant Qureshi filed a Complaint seeking declaratory judgment against Navigators regarding coverage for the Rashid Action (the "NJ Action")

66.     The NJ Action, captioned *M. Nasar Qureshi, M.D., PhD v. Navigators Insurance Company*, Civil Action No. BER-L-009066-17, was filed in the Superior Court of New Jersey Law Division, Bergen County (the "NJ Action").  A true and accurate copy of the complaint in the NJ Action is attached hereto as "**Exhibit O**."

67.     The NJ Action alleges solely that Qureshi is entitled to coverage under the Policy's D&O Coverage for the Rashid Action and seeks:  (1) a declaration that Navigators is required to defend and indemnify Qureshi in that action; and (2) payment of Qureshi's attorney's fees from October 9, 2017, the date of tender, through the conclusion of the action.

68.     On January 30, 2018, Navigators removed the NJ Action to the United States District Court for the District of New Jersey (the "NJ Court") on the basis of diversity jurisdiction, Civil Action No. 2:18-cv-01280-JLL-JAD.  A true and accurate copy of the Notice of Removal of the NJ Action is attached hereto as "**Exhibit P**."

69.     By agreement of the parties, Navigators' deadline to respond to the Complaint in the NJ Action was twice extended, up through April 4, 2018.  However, that date was stayed by the NJ Court on March 19, 2018, when it *sua sponte* issued an order to show cause why the NJ Action should not be remanded to New Jersey State Court pursuant to the *Brillhart* abstention doctrine or transferred to a federal district court in Illinois. A true and accurate copy of the NJ Court's March 19, 2018 order to show cause is attached hereto as "**Exhibit Q**."

70. *Brillhart* abstention is not appropriate as regards the coverage issues presented in the NJ Action because, among other reasons, resolution of those issues does not turn on factual questions that will be adjudicated in the Rashid Action. Accordingly, there is no parallel state court proceeding which would implicate that doctrine.

71. In addition, the NJ Action seeks coverage for Qureshi alone and would not adjudicate the rights of the other Defendants in this action. If successful, Qureshi would deplete the Policy limits available to the other Insureds. Accordingly, those Insureds are a necessary party to any coverage action.

72. Aside from Qureshi being a New Jersey resident, the state has no apparent nexus with the APPNA, the Policy, or the Rashid Action, and none of the other Defendants is a resident of that state. Accordingly, it does not appear that any New Jersey court would have personal jurisdiction over all of the necessary parties.

73. Transfer of the NJ Action would, therefore, be appropriate and necessary. However, transfer alone is not sufficient, given the limited scope of Qureshi's claims. Accordingly, Navigators now brings this suit naming all of the Insured parties to the Rashid Action. In the event that the NJ Action is transferred to this Court, that matter can be dismissed or joined with this action.

## POLICY TERMS

74. The scope of coverage provided under each of the Policy's coverage parts is defined in separate Insuring Agreements contained in each coverage part. The Policy's General Terms and Conditions ("GT&C") further specify that Navigators' agreement to insure APPNA is "subject to all terms, conditions and limitations of this Policy." Identical language is repeated in the D&O Coverage and EPL Coverage.

16

**I.     D&O Coverage**

75.     The Insuring Agreements at Section I. of the D&O Coverage states, in relevant part, that "[p]rovided that a **Claim**[1] is first made against an **Insured** during the **Policy Period** … and further that such **Claim** is reported to the Insurer":

> A.     The Insurer will pay to or on behalf of the **Insured Persons** all **Loss** which the **Insured Persons** are legally obligated to pay as a result of a **Claim** against the **Insured Persons** for a **Wrongful Act** by the **Insured Persons**, except for **Loss** which the **Company** actually pays as advancement or indemnification.

> B.     The **Insurer** will pay to or on behalf of the **Company** all **Loss** which the **Insured Persons** are legally obligated to pay as a result of a **Claim** against the **Insured Persons** for a **Wrongful Act** by the **Insured Persons**, but only to the extent the **Company** is required or permitted by law to pay such **Loss** to or on behalf of the **Insured Persons** as advancement or indemnification.

> C.     The Insurer will pay to or on behalf of the **Company** all **Loss** which the **Company** is legally obligated to pay as a result of a **Claim** for a **Wrongful Act** by the **Company**.

76.     Section II.A. of the D&O Coverage defines "Claim," in relevant part, as:

> a.     a written demand for monetary or non-monetary relief made against any **Insured**; [or]

> *          *          *

> c.     a civil … proceeding brought against any **Insured** seeking monetary or non-monetary relief and commenced by the service of a complaint or similar pleading[.]

77.     Section II.B. of the D&O Coverage defines "Employee," in relevant part, as "any individual who performs labor or services for the Company as a volunteer."

---

[1] Terms appearing in **bold** in sections of the Policy quoted in this Complaint are specifically defined terms in the Policy.

78.     Section II.C. of the D&O Coverage defines "Insured" as "the **Company** and all **Insured Persons**."

79.     Section II.D. of the D&O Coverage defines "Insured Person," in relevant part, as "any past, present or future duly elected or appointed director, officer, trustee or member of the board of managers or any committee of the **Company**;" and "any **Employee**."

80.     Section II.J. of the D&O Coverage defines "Wrongful Act," in relevant part, as "any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty…by any **Insured Person** in his or her capacity as such with the **Company**;…or any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty by the **Company**."

81.     Section III.A. of the D&O Coverage precludes coverage for any payment of Loss in connection with any Claim made against an Insured brought about or contributed by:

1.     the gaining by any **Insured** of any profit, advantage or remuneration to which such **Insured** was not legally entitled; or

2.     the deliberately fraudulent or criminal acts of any **Insured**;

provided, however: (i) this exclusion shall only apply if it is finally adjudicated such conduct in fact occurred; (ii) this exclusion shall not apply to coverage provided under INSURING AGREEMENT B;

82.     Section III.H. of the D&O Coverage precludes coverage for any payment of Loss in connection with any Claim made against an Insured:

by or on behalf of any **Insured** or any security holder of the Company; provided, however, that this exclusion shall not apply to any **Claim**:

1.     brought by any **Insured** where such **Claim** is in the form of a cross-claim or third party claim for contribution or indemnity which is part of and results directly from a **Claim** which is not otherwise excluded by the terms of this Coverage Part; or

2.     brought by any security holder of the **Company**, whether directly or derivatively, if the security holder bringing such **Claim** is acting

18

totally independently of, and without the solicitation, assistance, active participation or intervention of, the **Company** or any **Insured Person**;

3. brought in any bankruptcy proceeding by or against any entity included within the term "**Company**" by any creditors committee, examiner, trustee, receiver, liquidator or rehabilitator appointed with respect to such entity;

4. brought by any **Insured Person** who has neither served in such capacity nor as consultant to any entity included within the term "**Company**" for at least three (3) years prior to such **Claim** having been first made;

5. brought by any **Insured Person** of any entity included within the term "**Company**" formed and operating outside the United States of America or any of its territories or possessions against such **Company** or any **Insured Person** thereof, if such **Claim** is brought and maintained outside the United States of America, Canada or any other common law jurisdiction; or

6. arises out of, is based upon, or is attributable to any whistleblower activity, including but not limited to any such activity protected under the Sarbanes-Oxley Act of 2002, the False Claims Act, or any similar federal, state, local or foreign law or statute;

83. Upon information and belief, APPNA has not provided any advancement or indemnification to any of the individual Defendants as regards the Rashid Action. Accordingly, Insuring Agreement B is not applicable to any issue regarding coverage for the Rashid Action.

## II.    EPL Coverage

84. The Insuring Agreement at Section I. of the EPL Coverage provides, in relevant part, that:

> Provided that a **Claim** is first made against an **Insured** during the **Policy Period** … and further that such **Claim** is reported to the Insurer … the Insurer will pay to or on behalf of the **Insureds** all **Loss** which the **Insureds** are legally obligated to pay as a result of a **Claim** first made against the **Insureds** during the **Policy Period** or the **Discovery Period**, if purchased, for a **Wrongful Act** by an **Insured** in his, her or its capacity as such.

85. Section II.A. of the EPL Coverage defines "Claim," in relevant part, as:

    a.    a written demand for monetary or injunctive relief or a written demand for reinstatement, re-employment or re-engagement; [or]

    b.    a civil proceeding commenced by the service of a complaint, summons, notice of application, writ, claim form or similar pleading in any jurisdiction in the world[.]

86.    Section II.B. of the EPL Coverage defines "Employee," in relevant part, as:

    1.    any individual whom the **Company** compensates by wages, salary and/or commissions and whose labor or service is directed by the **Company**, whether such individual performs such labor or service on a full-time, part-time, seasonal or temporary basis; [or]

    2.    any individual who performs labor or services for the **Company** as a volunteer[.]

87.    Section II.C. of the EPL Coverage defines "Insured" as "the **Company** and all **Insured Persons**."

88.    Section II.D. of the EPL Coverage defines "Insured Person," in relevant part as:

    1.    any duly elected or appointed principal, partner, director, officer, trustee, in-house general counsel, risk manager or member of the board of managers or management committee of the **Company**; [or]

*    *    *

    3.    any **Employee**.

89.    Section II.H. of the EPL Coverage defines "Wrongful Act," in relevant part, as:

    1.    any actual or alleged:

    a.    wrongful dismissal, discharge or termination (whether actual, constructive or retaliatory) of employment, wrongful failure or refusal to hire or promote, wrongful discipline or demotion, wrongful deprivation of career opportunity, negligent employment evaluation, employment related misrepresentation, or failure to grant tenure; [or]

*    *    *

8883118v.6

        d.      employment-related invasion of privacy, defamation (including libel and slander) or negligent or intentional infliction of emotional distress;

90.      Section III.A. of the EPL Coverage precludes coverage for any payment of Loss in connection with any Claim made against an Insured brought about or contributed by:

1.      the gaining by any **Insured** of any profit, advantage or remuneration to which such **Insured** was not legally entitled; or

2.      the deliberately fraudulent or criminal acts of any **Insured**;

provided, however, this exclusion shall only apply if it is finally adjudicated such conduct in fact occurred[.]

### FIRST CAUSE OF ACTION
(All Coverages – Rescission at Law)

91.      Navigators repeats, restates and reiterates each and every allegation set forth in paragraphs "1" through "73" of this Complaint as if fully set forth herein.

92.      APPNA submitted an Application for insurance to Navigators on or about September 28, 2016, shortly after the Cease and Desist Letter was issued. The Application is specifically incorporated into and, therefore is a part of, the Policy.

93.      The Cease and Desist Letter was addressed to Jennifer Wozniak Watson. The Application was executed on behalf of APPNA by Jennifer Wozniak Watson.

94.      Section 9 the Application includes the following question at subsection c:

Does the Applicant or any person in his or her capacity as director, officer, trustee, or any person responsible for insurance, complaints or claim reporting, have knowledge of any act, error, omission, fact, incident, situation, unresolved dispute or other circumstance that is or could be the basis for a claim under the proposed insurance policy?

APPNA responded to the question by checking the box marked "No," indicating that none of the persons specified in the foregoing question had knowledge of any circumstance that was or could be the basis of a claim under the proposed insurance.

95.     In fact, upon information and belief, APPNA had received and was aware of the Cease and Desist Letter at the time of the Application and therefore had knowledge of it.  This included at least one director, officer, and/or trustee of APPNA, and/or a person responsible for insurance, complaints, or claim reporting at APPNA, including but not limited to Jennifer Wozniak Watson.

96.     The Cease and Desist Letter, and the matters discussed therein, are a circumstance that was or could be the basis of a claim under the proposed insurance at the time of the Application.  APPNA's answer to the question at Section 9.c. of the Application was, therefore, materially false.  Further, at no time after the submission of the Application and prior to the issuance of the Policy did APPNA advise there had been any changes in APPNA's submission to Navigators.

97.     Given the close proximity of the issuance of the Cease and Desist Letter to the submission of the Application by APPNA, the misrepresentations contained in the Application were knowingly and intentionally made.  Upon information and belief, among other reasons, APPNA chose not to reveal the circumstances surrounding the Cease and Desist Letter to avoid those matters having an impact on its ability to obtain insurance or the cost thereof.

98.     The misrepresentations contained in the Application specifically concerned circumstances that were or could be the basis for a claim under the proposed insurance policy.  Indeed, the Claim presently at issue is a direct result of those circumstances.   Those misrepresentations were, therefore, plainly material to the risk assumed by Navigators when it issued the Policy.

99.     Navigators had no knowledge of the Cease and Desist Letter, or the alleged circumstances or matters which led to its issuance, prior to issuing the Policy.   In fact,

22

Navigators did not learn of these matters until a year later. Accordingly, Navigators reasonably believed the statements contained in the application to be true.

100. For the foregoing reasons, the misrepresentations contained in the Application: (1) were made with an actual intent to deceive; and/or (2) materially affected the acceptance of the risk assumed by Navigators. Accordingly, Navigators is entitled to entry of a judgment rescinding the Policy *ab initio* in its entirety.

101. To the extent appropriate and as ordered by the Court, Navigators is prepared to return any premiums paid in the event rescission is so ordered.

## SECOND CAUSE OF ACTION
(All Coverages – Equitable Rescission)

102. Navigators repeats, restates and reiterates each and every allegation set forth in paragraphs "1" through "73" of this Complaint as if fully set forth herein.

103. As set forth above, APPNA responded to the question at Section 9.c. the Application by checking the box marked "No," indicating that none of the persons specified in the foregoing question had knowledge of any circumstance that was or could be the basis of a claim under the proposed insurance.

104. Upon information and belief, APPNA and the specified persons had received and were aware of the Cease and Desist Letter at the time of the Application and therefore had knowledge of a circumstance that was or could be the basis of a claim under the proposed insurance. APPNA's answer to the question at Section 9.c. of the Application was, therefore, materially false. At no time after the submission of the Application and prior to the issuance of the Policy did any of the Defendants advise there had been any changes in APPNA's submission to Navigators.

8883118v.6

105. Upon information and belief, the misrepresentations by APPNA contained in the Application were knowingly and intentionally made to Navigators, for the purpose of inducing Navigators to issue the Policy and to do so on materially better terms than would be available had the Cease and Desist Letter been disclosed.

106. Navigators had no knowledge of the Cease and Desist Letter, or the alleged circumstances or matters which led to it, prior to issuing the Policy. In fact, Navigators did not learn of these matters until a year later. Accordingly, Navigators reasonably believed the statements contained in the application to be true.

107. Navigators issued the Policy in reliance on the truth of the representations made by APPNA in the Application. Had Navigators known of the Cease and Desist Letter and attendant circumstances prior to the issuance of the Policy, it would not have issued it or would have issued it on different terms, including a higher premium and/or with a specific exclusion governing Rashid's allegations.

108. For the foregoing reasons, the misrepresentations contained in the Application submitted by or on behalf of APPNA concerned a material fact, were made by APPNA for the purpose of inducing Navigators to act, and were known by APPNA to be false. For its part, Navigators was ignorant of the falsity of the statements contained in the Application, reasonably believed these statements to be true, and acted in reliance on these statements to its detriment. Accordingly, Navigators is entitled to entry of a decree or judgment rescinding the Policy *ab initio* in its entirety.

109. To the extent appropriate and as ordered by the Court, Navigators is prepared to return any premiums paid in the event rescission is so ordered.

8883118v.6

## THIRD CAUSE OF ACTION
(All Coverages – Misrepresentation)

110.    Navigators repeats, restates and reiterates each and every allegation set forth in paragraphs "1" through "73" of this Complaint as if fully set forth herein.

111.    As set forth above, APPNA responded to the question at Section 9.c. the Application by checking the box marked "No," indicating that none of the persons specified in the foregoing question had knowledge of any circumstance that was or could be the basis of a claim under the proposed insurance.

112.    Upon information and belief, APPNA and the specified persons had received and were aware of the Cease and Desist Letter at the time of the Application and therefore had knowledge of a circumstance that was or could be the basis of a claim under the proposed insurance.  APPNA's answer to the question at Section 9.c. of the Application was, therefore, materially false.  At no time after the submission of the Application and prior to the issuance of the Policy did any of the Defendants advise there had been any changes in APPNA's submission to Navigators.

113.    Upon information and belief, the misrepresentations by APPNA contained in the Application were knowingly and intentionally made to Navigators, for the purpose of inducing Navigators to issue the Policy and to do so on materially better terms than would be available had the Cease and Desist Letter been disclosed.

114.    Navigators had no knowledge of the Cease and Desist Letter, or the alleged circumstances or matters which led to it, prior to issuing the Policy.  In fact, Navigators did not learn of these matters until a year later.  Accordingly, Navigators reasonably believed the statements contained in the application to be true.

115.     Navigators issued the Policy in reliance on the truth of the representations made by APPNA in the Application.  Had Navigators known of the Cease and Desist Letter and attendant circumstances prior to the issuance of the Policy, it would not have issued it or would have issued it on different terms, including a higher premium and/or with a specific exclusion governing Rashid's allegations.

116.     For the foregoing reasons, APPNA concealed or misrepresented a fact in its Application relating to the insurance at issue, that fact was material to the risk and made to Navigators, the fact was concealed or misrepresented by APPNA knowingly, willfully, and with intent to deceive Navigators, and Navigators reasonably relied on APPNA's statements made or omissions to its detriment.  Accordingly, Navigators is entitled to entry of a judgment declaring that the Policy is void and, therefore, no coverage is afforded for any Loss incurred in connection with the Rashid Action.

**FOURTH CAUSE OF ACTION**
(All Coverages – Application Exclusion)

117.     Navigators repeats, restates and reiterates each and every allegation set forth in Paragraphs "1" through "90" of this Complaint as if fully set forth herein.

118.     As set forth above, APPNA submitted an Application for insurance to Navigators on or about September 28, 2016, shortly after the Cease and Desist Letter was issued.  Accordingly, the Application falsely stated that APPNA was not aware of any circumstance that was or could be the basis of a claim under the proposed insurance at the time of the Application.  At no time after the submission of the Application and prior to the issuance of the Policy did any of the Defendants advise there had been any changes in APPNA's submission to Navigators.

119.     Immediately following Section 9 of the Application, the policy states, in relevant part and in capital letters and bold font:

26

**IT IS UNDERSTOOD AND AGREED THAT ANY CLAIM ARISING OUT OF ANY SITUATION THAT IS OR SHOULD HAVE BEEN REPORTED IN a, b or c ABOVE IS EXCLUDED FROM THE PROPOSED INSURANCE.**

120.     The Application, and hence the foregoing exclusion, is specifically incorporated into and, therefore is a part of, the Policy.  Thus, any claim arising out of any situation that should have been reported in response to the question at Section 9.c. of the Application is excluded from coverage under the Policy.

121.     The Cease and Desist Letter, and the matters discussed therein are a situation that should have been reported in response to the question at Section 9.c. of the Application.  The Rashid Action is a Claim arising out of that situation.

122.     For the foregoing reasons, coverage under the Policy for the Rashid Action is precluded by the plain language of the foregoing exclusion in the Application.  Accordingly, Navigators is entitled to entry of a judgment declaring that no coverage is afforded under the Policy to any Insured for any Loss incurred in connection with the Rashid Action.

### FIFTH CAUSE OF ACTION
(All Coverages – Representations)

123.     Navigators repeats, restates and reiterates each and every allegation set forth in Paragraphs "1" through "90" of this Complaint as if fully set forth herein.

124.     As set forth above, APPNA submitted an Application for insurance to Navigators on or about September 28, 2016, shortly after the Cease and Desist Letter was issued.  Accordingly, the Application falsely stated that APPNA was not aware of any circumstance that was or could be the basis of a claim under the proposed insurance at the time of the Application.  At no time after the submission of the Application and prior to the issuance of the Policy did any of the Defendants advise there had been any changes in APPNA's submission to Navigators.

125.    Section VIII.F. of the Policy's GT&C, as amended by Endorsement 1.VIII,

provides:

> It is agreed by the Insureds that the particulars and statements contained in the Proposal Form and any information provided therewith (which shall be on file with the Insurer and deemed attached hereto as if physically attached hereto) are the basis of this Policy and are to be considered as incorporated in and constituting a part of this Policy.  It is further agreed by the Insureds that the statements in the Proposal Forms or in any information provided therewith are their representations, that they are material and that this Policy is issued in reliance upon the truth of such representations; provided, in the event that the Proposal Form contains misrepresentations made with the actual intent to deceive, or contains misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by Underwriters under this Policy, this Policy shall be void and have no effect whatsoever.  Knowledge of any matter which may give rise to a claim or any misrepresentation made by an Executive Officer shall be imputed to the Company, but will not be imputed to any Insured Person who had no knowledge of the matter which may give rise to a claim or the misrepresentation.

126.    Upon information and belief, Defendants had received and were aware of the Cease and Desist Letter at the time of the Application and therefore had knowledge of a matter which may give rise to a claim.  The answer to the question at Section 9.c. of the Application, made by APPNA on behalf of Defendants, was, therefore, materially false.

127.    Upon information and belief, the misrepresentations by or on behalf of Defendants contained in the Application were knowingly and intentionally made to Navigators, for the purpose of inducing Navigators to issue the Policy and to do so on materially better terms than would be available had the Cease and Desist Letter been disclosed.  Navigators, in fact, relied on these misrepresentations in issuing the Policy under the terms specified.

128.    For the foregoing reasons, the misrepresentations contained in the Application: (1) were made with an actual intent to deceive; and/or (2) materially affected the acceptance of the risk or the hazard assumed by Navigators.  Accordingly, Navigators is entitled to entry of a

28

judgment declaring that the Policy is void and, therefore, no coverage is afforded for any Loss incurred in connection with the Rashid Action.

## SIXTH CAUSE OF ACTION
### (All Coverages – Fortuity/Known Loss Doctrine)

129.    Navigators repeats, restates and reiterates each and every allegation set forth in Paragraphs "1" through "90" of this Complaint as if fully set forth herein.

130.    Upon information and belief, APPNA had received and was aware of the Cease and Desist Letter prior to the inception of the Policy and therefore had knowledge of it.  Upon information and belief, this knowledge included each of the Defendants.

131.    As a result of the Cease and Desist Letter, Defendants knew or had reason to know, when APPNA purchased the Policy, that there was a substantial probability that they would suffer a loss as a result of Rashid's allegations.

132.    Defendants have, in fact, suffered the very loss which they knew or had reason to know was substantially probable from the Cease and Desist Letter, as a result of being named as defendants in the Rashid Action.  In this regard, any loss to Defendants resulting from the Rashid Action is part and parcel of the loss known to the Insureds at the inception of the Policy.

133.    Navigators had no knowledge of the Cease and Desist Letter, or the alleged circumstances or matters which led to its issuance, prior to issuing the Policy.  In fact, Navigators did not learn of these matters until a year later.  Accordingly, Navigators did not agree to insure that loss.

134.    For the foregoing reasons, coverage under the Policy for the Rashid Action is precluded by the fortuity and/or known loss doctrine.  Accordingly, Navigators is entitled to entry of a judgment declaring that no coverage is afforded under the Policy to any Insured for any Loss incurred in connection with the Rashid Action.

8883118v.6

## SEVENTH CAUSE OF ACTION
### (All Coverages – Claim First Made Prior to the Policy's Inception)

135.    Navigators repeats, restates and reiterates each and every allegation set forth in paragraphs "1" through "90" of this Complaint as if fully set forth herein.

136.    As set forth above, the Cease and Desist Letter was issued to APPNA on September 20, 2016, prior to the inception of the Policy.  The letter asserts that APPNA and the other Defendants made defamatory statements about Rashid by the Insureds regarding alleged tampering with APPNA's September 2016 Executive Committee elections.

137.    The Cease and Desist Letter demands non-monetary relief from APPNA in the form of a request that APPNA immediately:  (a) "cease and desist from making, or allowing to be made in its name, any further defamatory allegations against Dr. Rashid"; and (b) "issue a formal apology to Dr. Rashid and sending such apology via email or first class mail to all members of APPNA for inference of any wrongdoing on his part in the elections process."

138.    Accordingly, pursuant to Section II.A. of the D&O Coverage, the Cease and Desist Letter issued to APPNA constitutes a "Claim" under the Policy as "a written demand for … non-monetary relief made against any **Insured**."

139.    The Rashid Action is a civil action alleging causes of action against APPNA and the individual Defendants based on precisely the same facts and circumstances as the Cease and Desist Letter, namely the defamatory statements about Rashid allegedly made by APPNA and the other Defendants regarding alleged tampering with APPNA's September 2016 Executive Committee elections.

140.    Accordingly, pursuant to Section II.A. of the D&O Coverage, the Rashid Action constitutes a "Claim" as "a civil … proceeding brought against any **Insured** seeking monetary or non-monetary relief and commenced by the service of a complaint or similar pleading."

30

Pursuant to Section II.A. of the EPL Coverage, the Rashid Action also constitutes a "Claim" as "a civil proceeding commenced by the service of a complaint."

141.    Section VIII.B. of the GT&C provides, in relevant part, that:

> All **Claims** involving the same **Wrongful Act** or **Related Wrongful Acts** of one or more **Insureds** will be considered a single **Claim**, and will be deemed to have been made on the earlier of the following dates: (1) the earliest date on which any such **Claim** was first made; or (2) the earliest date on which any such **Wrongful Act** or **Related Wrongful Act** was reported under this Policy or any other policy providing similar coverage.

142.    Section II.U. of the Policy's GT&C defines "Related Wrongful Acts," in relevant part, as "Wrongful Acts which are logically or causally connected by reason of any common or related fact, circumstance, situation, transaction, event or decision."

143.    Because the Cease and Desist Letter and the Rashid Action arise from the same facts and circumstances, they involve the same **Wrongful Act** or **Related Wrongful Acts** within the scope of Section VIII.B. Accordingly, the Claims are considered a single Claim deemed to have been on the earliest date on which any such **Claim** was first made.

144.    Because this occurred when the Cease and Desist Letter was issued on September 20, 2016, the Claim was first made prior to the inception of the Policy. In this regard, to trigger the Insuring Agreements under either the D&O Coverage or the EPL Coverage requires "that a **Claim** is first made against an **Insured** during the **Policy Period**."

145.    For the foregoing reasons, the allegations set forth in the Rashid Action do not trigger coverage under the Insuring Agreements of either the D&O Coverage or the EPL Coverage. Accordingly, Navigators is entitled to entry of a judgment declaring that no coverage is afforded under the Policy to any Insured for any Loss incurred in connection with the Rashid Action.

31

## EIGHTH CAUSE OF ACTION
### (D&O Coverage – "Insured vs. Insured")

146.    Navigators repeats, restates and reiterates each and every allegation set forth in paragraphs "1" through "90" of this Complaint as if fully set forth herein.

147.    Section III.H. of the D&O Coverage precludes coverage for any payment of Loss in connection with any Claim made against an Insured "by or on behalf of any **Insured**" (the "Insured vs. Insured Exclusion"). Although this exclusion is subject to certain exceptions enumerated therein, none are applicable to any claim raised against any Defendant in the Rashid Action.

148.    Upon information and belief, Rashid was an Insured under the Policy at the inception of the Rashid Action. In this regard, the complaint filed in the Rashid Action alleges that "RASHID had been elected to the Executive Committee [of APPNA] for the two (2) year period preceding September 13, 2016" and that "RASHID served as Treasurer to APPNA in 2014 and as Secretary to APPNA in 2015."

149.    To the extent that any of the Defendants are entitled to any coverage under the Policy, each would necessarily have to be an Insured under the Policy as well. Upon information and belief, each of the Defendants claims to be an Insured under the Policy.

150.    Accordingly, the Rashid Action is a Claim made against an Insured by an Insured and, therefore, falls squarely within the plain language of the Insured vs. Insured Exclusion. Accordingly, the Policy's D&O Coverage does not afford coverage for the Rashid Action.

151.    For the foregoing reasons, coverage under the D&O Coverage for the Rashid Action is precluded by the Insured vs. Insured Exclusion. Accordingly, Navigators is entitled to entry of a judgment declaring that no coverage is afforded under the D&O Coverage to any Insured for any Loss incurred in connection with the Rashid Action.

8883118v.6

## NINTH CAUSE OF ACTION
(D&O Coverage – Unlawful or Intentional Conduct)

152.     Navigators repeats, restates and reiterates each and every allegation set forth in paragraphs "1" through "90" of this Complaint as if fully set forth herein.

153.     Section III.A. of the D&O Coverage precludes coverage  for any payment of Loss in connection with any Claim made against an Insured brought about or contributed by:

1.     the gaining by any Insured of any profit, advantage or remuneration to which such Insured was not legally entitled; or

2.     the deliberately fraudulent or criminal acts of any Insured;

provided, however: (i) this exclusion shall only apply if it is finally adjudicated such conduct in fact occurred; (ii) this exclusion shall not apply to coverage provided under INSURING AGREEMENT B;

154.     Section III of the D&O Coverage further provides that, for the purpose of determining the applicability of the foregoing exclusion, "no **Wrongful Act** of any **Insured Person** shall be imputed to any other **Insured Person**, and only the **Wrongful Acts** of any president, chief executive officer or chief financial officer of the **Company** shall be imputed to the **Company**."

155.     The complaint filed in the Rashid Action alleges conduct falling within the scope of the foregoing exclusion, including but not limited to certain of the Defendants seeking to gain an advantage in the APPNA elections to which they were not legally entitled.

156.     In addition, the complaint filed in the Rashid Action alleges unlawful or intentional misconduct.  Such conduct is generally uninsurable under Illinois law as a matter of public policy.

157.     Upon a final adjudication in the Rashid Action or this action that any Defendant engaged in conduct falling within the scope of the foregoing exclusion and/or other unlawful or intentional misconduct, coverage under the D&O Coverage for the Rashid Action would be

33

precluded. In such event, Navigators would be entitled to entry of a judgment declaring that no coverage is afforded under the D&O Coverage to any Insured engaging is such conduct for any Loss incurred in connection with the Rashid Action.

## TENTH CAUSE OF ACTION
(EPL Coverage – Unlawful or Intentional Conduct)

158. Navigators repeats, restates and reiterates each and every allegation set forth in paragraphs "1" through "90" of this Complaint as if fully set forth herein.

159. Section III.A. of the EPL Coverage precludes coverage for any payment of Loss in connection with any Claim made against an Insured brought about or contributed by:

1. the gaining by any Insured of any profit, advantage or remuneration to which such Insured was not legally entitled; or

2. the deliberately fraudulent or criminal acts of any Insured;

provided, however, this exclusion shall only apply if it is finally adjudicated such conduct in fact occurred[.]

160. Section III.C. of the EPL Coverage further provides that, for the purpose of determining the applicability of the foregoing exclusion, "no **Wrongful Act** of any **Insured Person** shall be imputed to any other **Insured Person**. The **Wrongful Acts** of any past, present or future chairman of the board, president, chief executive officer, chief operating officer or chief financial officer of the **Company** shall be imputed to the **Company**."

161. The complaint filed in the Rashid Action alleges conduct falling within the scope of the foregoing exclusion, including but not limited to certain of the Defendants seeking to gain an advantage in the APPNA elections to which they were not legally entitled.

162. In addition, the complaint filed in the Rashid Action alleges unlawful or intentional misconduct. Such conduct is generally uninsurable under Illinois law as a matter of public policy.

8883118v.6

163.    Upon a final adjudication in the Rashid Action or this action that any Defendant engaged in conduct falling within the scope of the foregoing exclusion and/or other unlawful or intentional misconduct, coverage under the D&O Coverage for the Rashid Action would be precluded.  In such event, Navigators would be entitled to entry of a judgment declaring that no coverage is afforded under the D&O Coverage to any Insured engaging is such conduct for any Loss incurred in connection with the Rashid Action.

**WHEREFORE,** in light of the foregoing, Plaintiff Navigators Insurance Company respectfully submits that judgment should be entered as follows:

a.  on the First Cause of Action, rescinding the Policy *ab initio*;

b.  on the Second Cause of Action, rescinding the Policy *ab initio*;

c.  on the Third Cause of Action, declaring that the Policy is void and, therefore, that Navigators has no coverage obligations for the Rashid Action under the Policy;

d.  on the Fourth Cause of Action, declaring that Navigators has no coverage obligations for the Rashid Action under the Policy;

e.  on the Fifth Cause of Action, declaring that the Policy is void and, therefore, that Navigators has no coverage obligations for the Rashid Action under the Policy;

f.  on the Sixth Cause of Action, declaring that Navigators has no coverage obligations for the Rashid Action under the Policy;

g.  on the Seventh Cause of Action, declaring that Navigators has no coverage obligations under the Policy's D&O Coverage;

h.  on the Eighth Cause of Action, declaring that Navigators has no coverage obligations under the Policy's D&O Coverage;

i.  on the Ninth Cause of Action, declaring that Navigators has no coverage obligations under the Policy's D&O Coverage;

j.  on the Tenth Cause of Action, declaring that Navigators has no coverage obligations under the Policy's EPL Coverage; and

k.  for such other and further relief, including an award of costs, as may be just and proper.

8883118v.6

Dated:     Chicago, Illinois
            March 29, 2018

                            Respectfully submitted,

                            NAVIGATORS INSURANCE COMPANY

                            By: /s/ Michael J. Duffy_____

Michael J. Duffy (#6196669) - michael.duffy@wilsonelser.com
Abigail E. Rocap (#6310024) – abigail.rocap@wilsonelser.com
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
55 West Monroe Street, Suite 3800
Chicago, IL  60603
Tel.  (312) 704-0550; Fax.  (312) 704-1522

*Of Counsel*

David S. Sheiffer (david.sheiffer@wilsonelser.com)
Richard W. Boone Jr. (richard.boone@wilsonelser.com)
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
150 E. 42nd Street
New York, NY  10017
Tel.  (212) 490-3000; Fax.  (212) 490-3038

8883118v.6